THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JEFFREY A. CHAITOFF )
)
*Plaintiff*, )     No. 18 C 7259
v. )
)     Chief Judge Virginia M. Kendall
)
OCWEN LOAN SERVICING LLC et al. )
)
*Defendants*. )

## MEMORANDUM OPINION & ORDER

In 2018, Plaintiff Jeffrey Chaitoff filed this lawsuit against Defendant Experian Information Solutions, Inc. Chaitoff claimed that Experian violated the Fair Credit Reporting Act ("FCRA") by inaccurately reporting his Ocwen Loan Servicing, LLC ("Ocwen") home mortgage as past due. In May 2021, the Court grant summary judgment in favor of Experian. (Dkt. 86). In August 2023, the Seventh Circuit affirmed, in part, and reversed, in part, the summary judgment ruling—remanding certain questions to this Court. Now, Defendant Experian again moves for summary judgment arguing that there is no genuine dispute of material fact as to the following remaining issues: (1) whether Chaitoff suffered actual damages and (2) whether Experian willfully failed to comply with 15 U.S.C. §§ 1681i(a)–(c) in its second reinvestigation into Chaitoff's dispute and Chaitoff's request to add a statement of dispute to his credit report. For the following reasons, the Court denies Experian's Motion [113].

## BACKGROUND

Given the multiple prior opinions in the case by the Court and the Seventh Circuit, the Court assumes familiarity with the underlying facts and recounts only the central details here.

## I. Overview of the Litigation

### a. Chaitoff's Mortgage

In 2012, Chaitoff obtained a refinanced mortgage through Ocwen Loan Servicing, LLC. (Dkt. 72 ¶ 6) [1]. By October 2016, Chaitoff was six months late on his mortgage payments. (*Id*.) In April 2017, Ocwen informed Chaitoff that he could modify his loan by entering a Trial Period Plan ("TPP"). (*Id.* ¶ 10). The TPP required that Chaitoff make trial payments in May, June, and July 2017 in order to permanently modify his mortgage. (*Id.* ¶ 11). As required, Chaitoff successfully made the TPP payments in each of May, June, and July 2017. (*Id*. ¶ 15). Following Chaitoff's successful completion of the TPP, Ocwen modified Chaitoff's loan effective August 1, 2017. (*Id.* ¶ 16). Starting in August 2017, Ocwen reported Chaitoff's account as being timely paid with no delinquencies. (*Id*.)

### b. Chaitoff's Credit File and Two Dispute Letters

Around April 24, 2018, Chaitoff contacted Ocwen via telephone to express concerns about its credit reporting—specifically, of his Ocwen loan during the three months he was completing the TPP. (*Id*. ¶ 17). The report showed that Chaitoff was delinquent during May, June, and July 2017 even though he had made his TPP payments. (Dkt. 72-6 at 4, Exhibit F). Ocwen's Office of the Consumer Ombudsman responded via letter on May 1, 2018, confirming the accuracy of its credit reporting. (Dkt. 72 ¶ 17).

### i. Chaitoff's First Dispute Letter

On May 21, 2018, Experian, Ocwen's Credit Reporting Agency ("CRA"), received a dispute letter from Chaitoff dated May 14, 2018. (*Id.* ¶ 29). Chaitoff's dispute letter concerned his

---

[1] Docket 72 is Experian's Rule 56.1 Statement of Facts, which it provided in its first Motion for Summary Judgment in 2021. This Order also references Docket 122, Chaitoff's Response to Supplemental Statement of Facts, which Chaitoff provided in response to Experian's pending Motion for Summary Judgment.

home mortgage account with Ocwen and stated that he had "made each monthly payment on time consistently throughout 2017" and that "the [Ocwen] trade line should reflect the payments were made timely." (*Id*.) Attached to this dispute were documents purporting to be from Ocwen regarding trial payments made pursuant to a TPP preceding a potential loan modification. (*Id*.) On May 28, 2018, Experian processed Chaitoff's dispute. (*Id*. ¶ 30).

Because Chaitoff was disputing delinquent payment history for which he had produced no proof of payment, the agent handling Chaitoff's dispute sent an Automated Consumer Dispute Verification ("ACDV") to Ocwen that day. (*Id*.) The ACDV attached all documents submitted by Chaitoff as part of his dispute and requested that Ocwen verify the account status and history. (*Id*.) Ocwen responded on May 29, 2018, verifying that the disputed information (i.e., that Chaitoff, indeed, had delinquent payment history) was accurate. (*Id*. ¶ 31). Ocwen's reporting indicated that Chaitoff was at least 180 days past due in his payments to Ocwen from October 2016 through July 2017. (*Id.*) Experian updated Chaitoff's Ocwen account in accordance with Ocwen's ACDV response on May 30, 2018. (*Id.* ¶ 32).

On May 30, 2018, Experian sent Chaitoff an updated consumer disclosure detailing the results of its reinvestigation. (*Id*. ¶ 33). The dispute results included the following paragraph: "We reviewed the documentation you provided with your dispute, but determined that it was not sufficient to make the changes or deletions you requested. We then forwarded your documentation to the furnisher of the information, along with a description of your dispute, and asked them to investigate your dispute. If the item you disputed was a public record, we contacted the vendor who collected the information from a public record source and asked them to verify the public record information. The results of our reinvestigation are included here." (*Id*.) The results also informed Chaitoff of his ability to add a consumer statement on his personal credit report:

"Consumer's may also contact creditors directly to dispute items reported by the creditor. If the issue is not resolved, then the consumer credit reporting agency must offer to include a consumer statement on the personal credit report." (Dkt. 122 ¶ 67). The dispute results Experian sent on May 30, 2018, also informed Chaitoff about his ability to add a consumer dispute statement to his credit file and the process for doing so. (*Id*.)

### ii. Chaitoff's Second Dispute Letter

On July 5, 2018, Experian received a second dispute letter from Chaitoff, dated July 2, 2018. (Dkt. 72 ¶ 34). Chaitoff's second dispute letter also related to his home mortgage account with Ocwen and again stated that he had "made each monthly payment on time consistently throughout 2017" and that "the [Ocwen] trade line should reflect the payments were made timely." (*Id*.) Though it did not explicitly request Experian to add a dispute letter, in his second letter, Chaitoff stated "I have already disputed this with you . . . and you failed to correct my report." (Dkt. 72-7, Exhibit G). It underscored that this was the last communication Chaitoff planned to have with Experian "before proceeding with litigation." (*Id*.)

On July 11, 2018, Experian processed Chaitoff's dispute. (Dkt. 72 ¶ 35). Again, because Chaitoff was disputing delinquent payment history for which he had produced no proof of payment, the agent handling Chaitoff's dispute sent an automated verification to Ocwen that day. (*Id*.) The automated verification attached all documents submitted by Chaitoff as part of his dispute and requested that Ocwen verify all information reporting on Chaitoff's account. (*Id*.)

Ocwen responded on July 15, 2018. (*Id*. ¶ 36). Ocwen's reporting again indicated that Chaitoff was at least 180 days past due in his payments to Ocwen from October 2016 through July 2017. (*Id*.) Experian updated Chaitoff's Ocwen account in accordance with Ocwen's ACDV response on July 16, 2018. (*Id*. ¶ 37). Experian sent Chaitoff an updated consumer disclosure

4

detailing the results of its reinvestigation the same day. (*Id.*) The dispute results Experian sent on July 16, 2018, informed Chaitoff about his ability to add a consumer dispute statement to his credit file and the process for doing so. (Dkt. 122 ¶ 69). Experian did not receive any other correspondence from Chaitoff following his July 2018 dispute letter, until the filing of this lawsuit. (Dkt. 72 ¶ 38). On January 17, 2019, at Ocwen's request, Chaitoff's Ocwen account was deleted from his credit file. (*Id.* ¶ 39).

### c. Experian's Procedures for Adding Dispute Statements

Experian maintains policies for adding consumer dispute statements to a consumer file. (Dkt. 115-1 ¶ 7, Exhibit R). Consumers who disagree with the accuracy of any items of credit information appearing in their file disclosure (or in a consumer credit report provided to a credit grantor) may submit disputes of those items to Experian through one of three ways: by U.S. mail, by calling a toll-free number, or by using Experian's online system, either directly, or indirectly through a reseller. (Dkt. 72 ¶ 24). Experian notifies consumers about its role in the dispute process and about the consumer's ability to add a statement of dispute to explain their side of the reporting. (Dkt. 115-1 ¶ 7).

Consumers may include general dispute statements with detail about the overall credit report or item-specific statements with detail about a specific item. (*Id.* ¶ 9). Statements can provide an explanation, for example, of the circumstances about a specific item or the overall credit report; consumers may also add statements after a dispute, if the consumer continues to disagree with a specific creditor's response. (*Id.*) Further, consumers may request Experian to remove a dispute statement at any time, and at a consumer's request, a new statement may be added to a pre-existing statement. (*Id.* ¶ 10).

Experian does not require the consumer to use any particular words or phrases when requesting that a dispute statement be added to their file, but it does look for what it describes as "some indication from the consumer that they wish to add a dispute statement." (*Id*. ¶ 11). Experian, however, does not assume that all disputes to Experian should be understood as an attempt to add a consumer dispute statement, and it is not Experian's policy to add a specific statement of dispute whenever a consumer requests a reinvestigation unless the consumer is a resident of Maine or New York. (*Id*. ¶ 12).

### d.  Chaitoff's Damages

Chaitoff identified three instances in which he was allegedly denied credit or given a higher rate on a loan because of Experian's credit report. (Dkt. 77 ¶ 41). First, in April 2018, FM Home Loans denied Chaitoff a loan after it determined that Chaitoff was ineligible because his credit report reflected non-payment in May, June, and July 2017. (Dkt. 77-2 at 2, Exhibit 2). FM Home Loans's DU Underwriting Findings further indicated that Chaitoff was ineligible for a loan due to the "Refer with Caution" recommendation, identifying that the Ocwen mortgage tradeline on his credit report was 60 days or more past due within the 12 months prior to the credit report date. (Dkt. 77 ¶ 51). Second, Northwest Federal Credit Union denied Chaitoff a car loan principally because of Chaitoff's "delinquent past or present credit obligations with others." (Dkt. 80 ¶ 54). Third, in July 2018, PNC Bank denied Chaitoff's car loan application. After submitting his application, however, Plaintiff received correspondence from PNC Bank asking for additional information, and Plaintiff never followed up with PNC Bank because he obtained a loan through Capital One. (*Id*. ¶¶ 55–56).

Chaitoff also alleges emotional harm. Chaitoff testified that he "dealt with a range of issues including sleeplessness, embarrassment, frustration and back problems." (*Id*. ¶ 61). He referred to

this period as a "living hell." (*Id.*) Further, he experienced emotional distress because his mortgage broker stated "the credit bureau is reporting you that you have not paid payments in a timely fashion for months. You're not going to get a mortgage." (*Id.* ¶ 52). Additionally, Capital One, which helped Chaitoff finance Chaitoff's purchase of a car, gave Chaitoff a high interest rate—which Chaitoff alleges added to his emotional distress. (Dkt. 121 at 11).

### e. The Seventh Circuit Opinion

Chaitoff initially alleged that Experian violated 15 U.S.C. § 1681e(b), the FCRA's reasonable procedures requirement, 15 U.S.C. § 1681i(a), the FCRA's reasonable reinvestigation requirement, and 15 U.S.C. § 1681i(c), the FCRA's dispute statement provision. (Dkt. 1 ¶¶ 47–48). Plaintiff claimed that Experian's violations were either negligent or willful under 15 U.S.C. §§ 1681n–o. (*Id.* ¶ 51). The Court granted Experian's motion for summary judgment. (Dkt. 86).

The Seventh Circuit affirmed in part, and reversed in part, the Court's initial grant of summary judgment in Experian's favor. *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 808 (7th Cir. 2023). The Seventh Circuit affirmed this Court's grant of summary judgment as it relates to Experian's reporting of the May, June, and July 2017 payments as late. *Id.* at 811. The Court of Appeals determined, however, that Experian's omission of Chaitoff's participation in the TPP was actionable under § 1681i(a). *Id.* at 816. Further, though the Court of Appeals determined that Experian was entitled to summary judgment as to willfulness with respect to Chaitoff's first dispute letter, it left open the question of whether Experian willfully failed to reasonably investigate Chaitoff's second dispute. *Id.* at 809; § 1681n. The Court did not address willfulness as to Chaitoff's § 1681i(c) claim (i.e., Experian's failure to include a statement of dispute in Chaitoff's credit file).

Accordingly, the issues on remand are (I) whether Chaitoff suffered actual damages sufficient to prevail on a negligence claim under § 1681o and (II) whether Experian willfully failed to comply with 15 U.S.C. §§ 1681i(a) and 1681i(c) in its second reinvestigation into Chaitoff's dispute letter and Chaitoff's request to add a statement of dispute to his credit report, actionable under § 1681n.

## **LEGAL STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g.*, *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). The parties genuinely dispute a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (citation omitted). The Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in his favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*.

**<u>DISCUSSION</u>**

I.    **Actual Damages**

The FCRA provides a private right of action for injured consumers; negligent violations are actionable under § 1681o and willful violations carry additional penalties and are actionable under § 1681n. To prevail on its Motion as to the negligence claim, Experian must show that there is no genuine dispute as to whether Chaitoff suffered actual damages because of Experian's violating the FCRA. *Bagby v. Experian Info. Sols., Inc.*, 162 F. App'x 600, 603-04 (7th Cir. 2006); 15 U.S.C. §§ 1681o, 1681i(a), (c). Chaitoff claims to have suffered actual damages because of (A) Experian's failure to reference the TPP in Chaitoff's credit file and (B) Experian's failure to add a consumer dispute statement. (Dkt. 121 at 3–4).

According to the statute, "actual damages" include the denial of credit or receiving a higher interest rate as a result of an inaccurate credit report. *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) (damages can include harms other than loss of credit). Other harms compensable under the Act include out-of-pocket losses, damage to character and mental distress. *Scheel–Baggs v. Bank of America,* 575 F.Supp.2d 1031 (W.D. Wis. 2008); *Kronstedt v. Equifax,* No 01–C–52–C, 2001 WL 34124783 *10 (W.D. Wis. Dec. 14, 2001) (citing *Cousin v. Trans Union Corp.,* 246 F.3d 359, 369 n. 15 (5th Cir. 2001). A plaintiff may only recover for actual damages caused by the violation. *See* 15 U.S.C. § 1681o (allowing recovery for "any actual damages sustained by the consumer as a result of the failure."). Further, the plaintiff bears the burden of establishing that he is entitled to damages. See *Ruffin–Thompkins v. Experian Info. Solutions,* 422 F.3d 603, 608 (7th Cir.2005); *Wantz v. Experian Info. Sols., Inc.*, 386 F.3d 829, 833 (7th Cir.

2004). Accordingly, we must examine the violation, determine whether Chaitoff demonstrated actual damages, and, if so, analyze whether the violation caused those damages.

### A. § 1681i(a) Violation – Experian's Omission of the TPP from Chaitoff's File

Chaitoff claims he suffered actual damages because Experian failed to report his participation in the TPP in his credit file. (Dkt. 121 at 2, 4); 15 U.S.C. 1681i(a). Because the FCRA is not a strict liability statute (i.e., notice of a violation is required), Experian may only be liable for damages *after* Chaitoff provided notice to the company of his dispute. *Ruffin–Thompkins*, 422 F.3d at 608; *Walton v. BMO Harris Bank N.A.*, 761 F. App'x 589, 592 (7th Cir. 2019) ("the Fair Credit Reporting Act is not a strict liability statute; [the CRA] was not required to reinvestigate until it received notice of a possible error"); *Sarver v. Experian Info. Sols., Inc.*, 299 F. Supp. 2d 875, 877 (N.D. Ill. 2004) ("Experian could only potentially be liable for injury occurring after that date [when the dispute was received]"). This means the Court must demonstrate actual damages at some point between May 21, 2018 (when Experian received Chaitoff's first dispute letter, (Dkt. 72 ¶ 17)) and January 17, 2019 (when Experian deleted the Ocwen account from Chaitoff's file). (*Id.* ¶ 39).

Chaitoff identified three instances in which he was allegedly denied credit based on his Experian credit report, which had inaccurately omitted his TPP participation. (Dkt. 77 ¶ 41). First, in April 2018, one month before Experian received the first dispute letter, FM Home Loans denied Chaitoff a mortgage. (Dkt. 77-2 at 2, Exhibit 2). Though Chaitoff alleges that this denial continued to prevent him from moving homes, (Dkt. 72 ¶¶ 57–58), he offers no corroborating evidence,

which shows FM Home Loans denied Chaitoff a loan *after* he notified Experian of his dispute about his credit file.

In *Walton v. BMO Harris Bank N.A.*, the Seventh Circuit explained that when a plaintiff alleges denial of credit, it must present evidence that the denials occurred after the plaintiff notified the credit reporting agency of her dispute. 761 F. App'x 589, 592 (7th Cir. 2019). Without more, the claim cannot survive summary judgment. *Id.* at 592. The same is true here. Chaitoff has not presented evidence that create a genuine dispute as to whether FM Home Loans denied him the loan after he notified Experian of his dispute. Without more, Chaitoff's "uncorroborated testimony" about how the April 2018 FM Home Loan denial injured him "is insufficient to survive summary judgment." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 939 (7th Cir. 1997) Therefore, this claim is insufficient to demonstrate actual damages. 15 U.S.C. § 1681o.

Second, Chaitoff provides a form from Northwest Federal Credit Union, denying his application for a car loan in July 2018. (Dkt. 72-14 at 1, Exhibit M). The form indicates that the credit union denied Chaitoff's application because of Chaitoff's "delinquent past or present credit obligations." (*Id.*) Unlike the home loan mortgage denial, the credit union denied Chaitoff the car loan *after* Chaitoff raised his dispute with Experian. (*Id.*)

Experian objects to the Court considering the document because it is "classic hearsay." (Dkt. 114 at 8). "Evidence offered at summary judgment must be admissible to the same extent as at trial, at least if the opposing party objects, except that testimony can be presented in the form of affidavits or transcripts of sworn testimony rather than in person." *Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017); *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016) ("To be considered on summary judgment, evidence must be admissible at trial, though 'the form produced

at summary judgment need not be admissible.' ") (quoting *Wragg v. Village of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010)).

Chaitoff contends the document is admissible under the business record exception. (Dkt. 121 at 7); *See* Fed.R.Evid. 803(6) (deeming generally admissible records of regularly conducted business activity). Though usually at summary judgment, "[d]ocuments must be authenticated by an affidavit that lays a proper foundation for their admissibility," *Steffek v. Client Servs., Inc.*, 948 F.3d 761, 769 (7th Cir. 2020), an exception exists where the objecting party relied "on that same document for its accuracy in earlier proceedings" *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 777–78 (7th Cir. 2006) (cleaned up).

Here, Experian's own Rule 56 Statement of Undisputed Material facts concedes that Northwest Federal Credit Union denied Chaitoff's loan application. (Dkt. 72 ¶ 42). Indeed, in Experian's "Plaintiff's Damages" section of the pending Motion, Experian describes the content of the form. (Dkt. 114 at 4). Therefore, Experian has conceded the accuracy of the form. *Thanongsinh*, 462 F.3d at 778. Accordingly, the form is hearsay, but falls under the business records exception, and Experian's objection is overruled; *See* Fed.R.Evid. 803(6).

As for the form's content, Experian argues that whether the credit union would have denied Chaitoff's car loan application if Experian had not omitted the TPP program from Chaitoff's file is speculative. (Dkt. 114 at 8); *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003) ("mere speculation or conjecture will not defeat a summary judgment motion.") (cleaned up). Chaitoff only must present evidence, however, which shows a "causal relation" between the statutory

violation and the harm suffered by the plaintiff. *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1194 (7th Cir. 2021) (quoting *Aldaco v. RentGrow, Inc.*, 921 F.3d 685, 689 (7th Cir. 2019)).

Here, it is not clear from the form that the credit union would have denied Chaitoff the car loan if Experian had not omitted Chaitoff's participation in the TPP. The form merely states that the key factors in the credit union's decision were Chaitoff's "serious delinquency," "proportion of balance to high credit on bank revolving or all revolving accounts," "too few accounts currently paid as agreed," and "proportion of loan balances to loan amounts it too high." (Dkt. 72-13 at 2). The form provides too little information to say definitively that a reasonable juror could not conclude that Experian's omitting the TPP caused the credit union to deny Chaitoff's loan. As the Court of Appeals explained,

> Say two debtors have identical credit reports showing patterns of delinquent payments. Neither is likely to obtain credit on favorable terms, if at all. Now imagine one of the debtors completed a TPP with her creditors, but that fact is not reported in her credit file. The debtor without the TPP has no evidence that she can make timely and complete payments, but the debtor who completed the TPP does.

*Chaitoff*, 79 F.4th at 813–14. Because Chaitoff is "the debtor who completed the TPP" in this scenario, Experian's omitting that fact may have caused Chaitoff to lose out on the car loan. Chaitoff has, thus, sufficiently demonstrated actual damages, to defeat Experian' Motion with respect to negligence.

As for Chaitoff's third claim of actual damages, PNC Bank denying Chaitoff's car loan, Chaitoff has not provided sufficient evidence to show Experian caused this. (Dkt. 80 ¶ 56). PNC requested additional documentation after reviewing Chaitoff's credit file, which Chaitoff did not respond to. (*Id.*) Experian, of course, is not responsible for this.

Chaitoff also claims that Experian's conduct caused him emotional distress. The Seventh Circuit maintains "a strict standard for a finding of emotional damage 'because they are so easy to manufacture.' " *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) (quoting *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir.2001)). In line with this standard, "damages for emotional distress must be proved with more than conclusory statements. *Persinger*, 20 F.4th at 1194.

Chaitoff testified that he "dealt with a range of issues including sleeplessness, embarrassment, frustration and back problems." (Dkt. 80 ¶ 61). Chaitoff's testimony about his alleged emotional distress, however, amounts merely to "conclusory statements" in reference to his alleged emotional distress. *Id.* at 1194. "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Drake v. 3M*, 134 F.3d 878, 887 (7th Cir. 1998). Without more, these cannot satisfy the damages element to survive summary judgment. *See Banno v. Experian Info. Sols., Inc.*, No. 15 C 8291, 2017 WL 3087726, *4 (N.D. Ill. July 20, 2017) ("If a plaintiff cannot prove some form of actual damages, such as financial injury or emotional distress, then she is not entitled to present negligence-based FCRA claims to a jury.").

Accordingly, because Chaitoff has presented evidence that Experian's omission of the TPP from Chaitoff's credit file may have caused Northwest Federal Credit Union to deny his application for a loan, Chaitoff's negligence claim may proceed. 15 U.S.C. §§ 1681i(c), 1681o.

### B. § 1681i(c) Violation – Experian's Failure to Add a Dispute Statement

Chaitoff also claims that Experian's § 1681i(c) violation (i.e., Experian's failure to add a dispute statement to his file) caused actual damage. Chaitoff, however, fails to present any

evidence, which persuades the Court that Experian's failure to add a dispute statement to Chaitoff's credit file caused actual damages. In fact, Chaitoff only raises arguments about Experian's failure to include the dispute statement in relation to the FM Home Loans denial. As the Court explained, however, because Experian was not on notice of Chaitoff's dispute with the company when FM Home Loans denied his credit application, Experian cannot be held responsible for this harm based on its omission of the dispute statement. *See* discussion *supra* Part I. A.

## II.    Willfulness

In its opinion, the Court of Appeals stated this Court could consider anew whether Experian's violation of § 1681i with respect to Plaintiff's second dispute and Experian's failure to add a statement of dispute were willful in violation of 15 U.S.C. § 1681n. *Chaitoff*, 79 F.4th at 813–14. To prevail on a willfulness claim, unlike a negligence claim, a plaintiff need not prove actual damages. *Persinger*, 20 F.4th at 1194–95 ("Even if a plaintiff cannot prove actual damages, [he] may still recover statutory or punitive damages by proving that the defendant willfully violated the FCRA."); 15 U.S.C. § 1681n(a). Chaitoff claims that Experian is liable for willfully violating the FCRA under § 1681n because of its (A) second reinvestigation into Chaitoff's dispute and (B) failure to add a dispute statement to Chaitoff's credit file.

"A willful violation is one committed in 'reckless disregard of [its] statutory duty.' " *Id*. at 819 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). "Reckless conduct is that which creates a risk substantially greater than that necessary to render the conduct negligent." *Id*. A company does not act in reckless disregard of the FCRA, however, unless its conduct "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69. In other words, the Court must evaluate the relevant

statute; then, it must determine whether there is a genuine dispute as to whether Experian's reading

of that statute created a risked that the company would violate the law in a way it would not have

had it "merely careless[ly]" read the statute. *Id.* at 69.

### A.  § 1681i(a) – Willfulness Regarding Experian Second Reinvestigation

Chaitoff claims that Experian willfully violated the FCRA in its second reinvestigation into

Chaitoff's dispute about his credit file. (Dkt. 121 at 13). The relevant statute is 15 U.S.C.

§ 1681i(a). Section 1681i(a)(1)(A) states:

> If the completeness or accuracy of any item of information
> contained in a consumer's file at a consumer reporting agency is
> disputed by the consumer and the consumer notifies the agency
> directly, or indirectly through a reseller, of such dispute, the agency
> shall, free of charge, conduct a reasonable reinvestigation to
> determine whether the disputed information is inaccurate and record
> the current status of the disputed information, or delete the item from
> the file in accordance with paragraph (5), before the end of the 30-
> day period beginning on the date on which the agency receives the
> notice of the dispute from the consumer or reseller.

By the statute's plain language, then, if a consumer notifies the CRA of a dispute, the CRA has 30

days to reasonably investigate the consumer's concerns. Section 1681i(a)(2) requires the CRA to

forward the dispute and "all relevant" information to the furnisher. Sections 1681i(a)(4) and

1681i (a)(5)(D) require the CRA to review all relevant information that a customer submits in his

dispute and to maintain an automated reinvestigation system " through which furnishers of

information to that consumer reporting agency may report the results of a reinvestigation that finds

incomplete or inaccurate information in a consumer's file to other such consumer reporting

agencies," respectively.

Here, Experian received notice of Chaitoff's claim on July 5, 2018. (Dkt. 72 ¶ 34).  In his

letter, Chaitoff wrote "I have already disputed this with you and . . . you failed to correct my

report." (Dkt. 72-7). Experian processed Chaitoff's second dispute letter on July 11, 2018—well

within the statutorily provided 30-day window. (*Id.* ¶ 35). Because Chaitoff had not produced proof of payment, like with Chaitoff's first dispute letter, Experian asked Ocwen to verify that its results were accurate via its automated verification system. (*Id.*; Dkt. 77 ¶ 35). It is undisputed that Experian sent to Ocwen "all relevant" documents Chaitoff had sent to Experian. (*Id.*) Ocwen responded on July 15, 2018. Ocwen's response indicted that Chaitoff had a delinquent payment history. Specifically, Ocwen's reporting indicates that Plaintiff was at least 180 days past due in his payments to Ocwen from October 2016 through July 2017. (*Id.* at 36). Experian, thus, followed the plain language of the statute.

Chaitoff mainly argues that because this was Experian's second reinvestigation that Experian's ineffective response amounts to a willful violation of the FCRA. (Dkt. 121 at 13). Chaitoff provides no caselaw, which directly supports this proposition, as applied to the facts of this case. For example, Chaitoff cites to *Jeffers v. First Nat'l Bank of Omaha,* in which a district court found that a CRA had "actual knowledge" of an inaccuracy in the credit file but failed to reinvestigate adequately and therefore acted recklessly. 679 F. Supp. 3d 757, 763 (C.D. Ill. 2023).

In contrast, here, Chaitoff presents no evidence that Experian had the requisite knowledge of an error in Ocwen's reporting—instead, he merely demonstrates that he sent a letter disputing the accuracy of his credit file. (*See* Dkt. 72-7). Chaitoff's raising the issue, even a second time, does not necessarily mean Experian had "actual knowledge" that Ocwen's report was wrong. If that were the case, Experian would have had "actual knowledge" that it was "violating" FCRA by reporting Chaitoff's May, June, and July 2017 mortgage was delinquent—since Chaitoff raised that in his letter. (*Id.*) (". . . the trade line should reflect the payments were made timely"). The Court of Appeals found, however, that Experian's reporting these three months as delinquent was

"accurate beyond any doubt." *Chaitoff*, 79 F.4th at 811. Therefore, Chaitoff raising the issue in his dispute letter is not a proper standard by which to measure Experian's "actual knowledge."

While its true Experian owes higher duty after a consumer, as here, "has alerted" the CRA about a potential inaccuracy. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 287 (7th Cir. 1994). Even then, however, as Experian points out, a Court weighs the cost of verifying the dispute with the possible harm it may cause a consumer. *Id*. at 287. Here, while Experian may have been negligent, Chaitoff has not presented evidence that demonstrates a reasonable juror could find Experian meets the standard for a willful violation, which requires a reading of the statute, which is beyond mere carelessness. *Safeco*, 551 U.S. at 69.

Moreover, because there is no doubt that Experian's "reading has a foundation in the [FCRA's] statutory text," no reasonable juror could find that the company willfully violated the statute based on its inadequate second reinvestigation into Chaitoff's dispute. *Id*. at 50.

**B. § 1681i(b) – Willfulness Regarding Experian's Failure to Add a Dispute Statement**

Evaluating Chaitoff's claim that Experian willfully violated the FCRA by failing to add a dispute statement, we again begin by identifying the relevant statute. *Safeco*, 551 U.S. at 69; (Dkt. 121 at 15). Section 1681i(b) states that if the reinvestigation does not resolve a dispute, the consumer may file a dispute statement setting forth the nature of the dispute. Further, pursuant to §1681i(c): "Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof."

Experian does not satisfy the statute's plain language as clearly as it does for Chaitoff's failure to reinvestigate claim, discussed above. The undisputed facts show the events unfolded as follows: Experian received Chaitoff's first dispute letter on May 21, 2018. (Dkt. 72 ¶ 29). Experian processed the dispute on May 28, 2018. (*Id.* ¶ 30). On July 5, 2018, Experian received Chaitoff's second dispute letter. (Dkt. 72 ¶ 34). Chaitoff's second dispute letter "was enough to trigger Experian's obligations to note the dispute under § 1681i(c)." *Chaitoff*, 79 F.4th at 820. From there, as the Court of Appeals explained:

> Experian [said] that its responses to Chaitoff's letters told him that he could file a statement of dispute if he wished. Again, the FCRA contains no magic words requirement; Congress placed the burden on CRAs to recognize a statement of dispute and act accordingly. Chaitoff's letters provided more than enough for Experian to fulfil its obligations. As best we can tell, it simply chose not to. Finally, Experian suggests that Chaitoff had to propose the text of his own statement of dispute—its proposed language is in its brief. This understanding turns the language of § 1681i(b) on its head.

*Id*. at 821.

Experian now claims that it understood Chaitoff's second letter as a mandate only to conduct a second reinvestigation into his dispute under § 1681i(a)—not to add a statement of dispute to his credit file. (Dkt. 124 at 13). Experian provides no binding caselaw support its understanding of FCRA that a statement from a consumer can trigger *either*: (1) a CRA to conduct a reinvestigation or (2) add a statement of dispute highlights that in his second dispute letter—but not both. Instead, Experian points to Chaitoff's dispute letter itself as evidence that Chaitoff only wanted Experian to reinvestigate the matter, not to add a dispute statement: "The purpose of this letter is to dispute my Ocwen Account . . . Please investigate this issue again." (Dkt. 114 at 14; Dkt. 72-7 at 1).

Experian conveniently discounts the first half of that quote, in which Chaitoff underscores that "the *purpose of this letter* is to *dispute* my Ocwen account." (Dkt. 72-7 at 1) (emphasis added). Further, Chaitoff adds in the letter that that this will be his last communication with Experian before "proceeding with litigation." (*Id*.) Despite this language, while conceding that, "Experian does not require the consumer use any magic words" in its brief, (Dkt. 114 at 4), in the same breath, Experian claims that it did not treat Chaitoff's second letter as an effort to add a statement of dispute. (*Id*. at 15).

These two propositions are inapposite. Indeed, barring a consumer writing the apparently superfluous magic words of "please treat this letter as a statement to dispute," it is difficult to imagine what would have prompted Experian to add a statement of dispute to Chaitoff's file. Further, Experian's unsubstantiated interpretation that the statute can only mandate a CRA to conduct a reinvestigation *or* add a statement of dispute lacks "a foundation in the [FCRA's] statutory text[.]" *Safeco*, 551 U.S. at 69. Such a departure from the FCRA's plain language at least raises the specter of a "reckless disregard of [Experian's] statutory duty." *Id*. at 57.

Accordingly, because Experian has not met its burden, the Court denies its Motion for Summary Judgment as to Chaitoff's willfulness claim under § 1681i(b).

**<u>CONCLUSION</u>**

Experian has not met its burden to show there is no genuine dispute of material facts as to (I) whether Chaitoff suffered actual damages or (II) that Experian did not act willfully in failing to include a statement of dispute. The Court, therefore, denies Experian's Motion for Summary Judgment [113].

Virginia M. Kendall
United States District Judge

Date: March 24, 2025