THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY A. CHAITOFF ) | |
| ) | |
| Plaintiff, ) | No. 18 C 07259 |
| v. ) | |
| ) | Chief Judge Virginia M. Kendall |
| ) | |
| OCWEN LOAN SERVICING LLC et al. ) | |
| ) | |
| Defendants. ) | |

**OPINION & ORDER**

Pending before the Court is Defendant Experian Information Solutions, Inc.'s Motion for Reconsideration. (Dkt. 134). Experian asks the Court to partially reconsider its March 24, 2025 Order (the "March Order"), (Dkt. 132), denying Experian's motion for summary judgment. In that Order, the Court found that Experian has not met its burden to show there was no genuine dispute of material facts as to (I) whether Plaintiff Jeffrey Chaitoff suffered actual damages and (II) that Experian did not act willfully in failing to include a statement of dispute in Chaitoff's credit file. (Dkt. 132 at 21). Proceeding under Federal Rule of Civil Procedure 59(e), Experian asks this Court to reexamine only the second holding: that there is still a genuine issue of material fact as to whether Experian acted willfully in failing to include a statement of dispute. (Dkt. 134 at 1). For the reasons below, the Court denies Experian's Motion for Reconsideration [134].

**BACKGROUND**

**I. Facts**

The Court assumes the parties' familiarity with the facts as set forth in the Summary Judgment Opinion and recounts only the relevant details here. (*See* Dkt. 132). In 2012, Chaitoff obtained a refinanced mortgage through Ocwen Loan Servicing, LLC. (Dkt. 132 at 2). After

1

becoming late on his mortgage payments, Chaitoff entered a Trial Period Plan ("TPP") to permanently modify his mortgage. (*Id.*) As the plan required, Chaitoff successfully made the TPP payments in each of May, June, and July 2017. (*Id.*) Following Chaitoff's successful completion of the TPP, Ocwen modified Chaitoff's loan effective August 1, 2017. (*Id.*) Starting in August 2017, Ocwen reported Chaitoff's account as being timely paid with no delinquencies. (*Id.*)

In April 2018, Chaitoff contacted Ocwen to express concerns about the company's credit reporting—specifically, of Chaitoff's Ocwen loan during the three months he was completing the TPP. (*Id.*) The report showed that Chaitoff was delinquent during May, June, and July 2017 even though he had made his TPP payments on time. On May 21, 2018, Experian, Ocwen's Credit Reporting Agency ("CRA"), received a dispute letter from Chaitoff dated May 14, 2018. (*Id.*)

On July 5, 2018, Experian received a second dispute letter from Chaitoff, dated July 2, 2018. (*Id.* at 4). Chaitoff's second dispute letter also related to his home mortgage account with Ocwen and again stated that he had "made each monthly payment on time consistently throughout 2017" and that "the [Ocwen] trade line should reflect the payments were made timely." (*Id.*) Though it did not explicitly request Experian to add a dispute letter, in his second letter, Chaitoff stated "I have already disputed this with you . . . and you failed to correct my report." (Dkt. 72-7, Exhibit G). It underscored that this was the last communication Chaitoff planned to have with Experian "before proceeding with litigation." (*Id.*)

Like the response to Chaitoff's first letter, because Chaitoff was disputing delinquent payment history for which he had produced no proof of payment, the agent handling Chaitoff's dispute sent an automated verification to Ocwen that day. (*Id.*) The automated verification attached all documents submitted by Chaitoff as part of his dispute and requested that Ocwen verify all information reporting on Chaitoff's account. (*Id.*) Ocwen responded on July 15, 2018.

2

(*Id*). Ocwen's reporting indicated that Chaitoff was at least 180 days past due in his payments to Ocwen from October 2016 through July 2017 (which includes the three months Chaitoff was participating in the TPP). (*Id*.)

As part of Experian's policy, consumers may add general dispute statements with detail about the overall credit report or item-specific statements with detail about a specific item to their customer file. (*Id.* at 5). Statements can provide an explanation, for example, of the circumstances about a specific item or the overall credit report; consumers may also add statements after a dispute, if the consumer continues to disagree with a specific creditor's response. (*Id*.) Further, consumers may request Experian to remove a dispute statement at any time, and at a consumer's request, a new statement may be added to a pre-existing statement. (*Id*.)

Experian does not require the consumer to use any particular words or phrases when requesting that a dispute statement be added to their file, but it does look for what it describes as "some indication from the consumer that they wish to add a dispute statement." (*Id*. at 6). Experian, however, does not assume that all disputes with Experian should be understood as an attempt to add a consumer dispute statement, and it is not Experian's policy to add a specific statement of dispute whenever a consumer requests a reinvestigation. (*Id.*)

II. **Procedural Posture**

On May 21, 2021, this Court granted summary judgment in Experian's favor. (Dkt. 86). In August 2023, the Seventh Circuit affirmed, in part, and reversed, in part, the summary judgment ruling—remanding certain questions to this Court. *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 808 (7th Cir. 2023). Among other issues, the Court of Appeals stated this Court could consider anew whether Experian's failure to add a statement of dispute after Chaitoff's second dispute letter was willful under 15 U.S.C. § 1681i(c); *Chaitoff*, 79 F.4th at 813–14. In March 2025, this Court

3

denied Experian's second motion for summary judgment. (Dkt. 132). The Court found that Experian had not met its burden to show there was no genuine dispute of material facts as to: (I) whether Chaitoff suffered actual damages and (II) that Experian did not act willfully in failing to include a statement of dispute in Chaitoff's customer file. (Dkt. 132 at 21).

The willfulness question is governed by 15 U.S.C. §§ 1681i(b)–(c). Section 1681i(b) states that if a reinvestigation does not resolve a dispute, the consumer may file a dispute statement setting forth the nature of the dispute. (Dkt. 132 at 18). Section 1681i(c) states: "Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof."

Experian now moves for partial reconsideration on the issue of whether Experian met its burden to show there is no genuine issue of material fact that Experian did not act willfully by violating 15 U.S.C. § 1681i(b) when it did not include a statement of dispute in Chaitoff's customer credit file after his second dispute letter. (Dkt. 134 at 1).

**STANDARD OF REVIEW**

Experian moves for reconsideration under Federal Rule of Civil Procedure 59(e). That rule only applies to motions that seek to "alter or amend a *judgment*." Fed. R. Civ. P. 59(e); *see Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012) ("[A] traditional Rule 59(e) motion . . . can only follow a 'judgment.' "). The "denial of summary judgment is an interlocutory ruling," not a final order or judgment, and not subject to a Rule 59(e) motion. *Haze v. Kubicek*, 880 F.3d 946, 950 (7th Cir. 2018); *see also Bedford v. DeWitt*, 695 F. Supp. 3d 998, 1001 (N.D. Ill. 2023) (Kendall, C.J.).

Still, denials of summary judgment are subject to reconsideration under Federal Rule of Civil Procedure 54(b) and "governed by largely the same standards as motions under Rule 59(e)." *Bedford*, 695 F. Supp. 3d at 1001. That is, reconsideration is only warranted in "rare circumstances, with the moving party bearing a heavy burden." *Id*. The party seeking reconsideration must "clearly establish[]" that the Court either committed a manifest error of law or fact or that some new evidence necessitates a reversal of the Court's prior order. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013). Accordingly, the Court treats Experian's Motion for Reconsideration as one made pursuant to Rule 54(b). *See Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998) ("[C]aptions do not control.").

## **DISCUSSION**

Experian's only argument is that the Court's March 2025 Order ruling that Experian willfully violated 15 U.S.C. § 1681i(b) runs afoul of the Supreme Court's holding in *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007). (Dkt. 134 at 1). Specifically, Experian argues that *Safeco* holds that once a Court concludes, in any order, that a company's conduct was not willful under § 1681(b) that the Court may not change its conclusion in a later order. (*Id.* at 2). Applying *Safeco*, here, Experian contends that the Court already had definitively ruled in its initial summary judgment order that Experian did not violate § 1681i(b) willfully and therefore, changing that conclusion with its March 2025 Order was improper. (*Id.*) Because the Court does not interpret *Safeco's* holding to dictate to district courts that they may not revise a conclusion after an initial opinion is reversed, the Court denies Experian's Motion. (Dkt. 134).

In *Safeco*, the Supreme Court examined whether willful violations under the Fair Credit Reporting Act (FCRA) also include those committed in reckless disregard for the law, determining that they do. 551 U.S. at 61. In addressing whether the insurance company defendants could be found liable for a willful violation, the Court explained:

5

> While we disagree with Safeco's analysis, we recognize that its reading has a foundation in the statutory text and a sufficiently convincing justification to have persuaded the District Court to adopt it and rule in Safeco's favor. Given this dearth of guidance and the less-than-pellucid statutory text, Safeco's reading was not objectively unreasonable, and so falls well short of raising the unjustifiably high risk of violating the statute necessary for reckless liability.

*Id.* at 70 (cleaned up); (*see also* Dkt. 134 at 4). Because this Court initially granted Experian's summary judgment motion as to the willfulness question, (Dkt. 86), Experian argues that *Safeco* mandates that it cannot change its conclusion.

The problem with Experian's argument is twofold. First, this Court never gave a thorough interpretation of Experian's understanding of 15 USC § 1681i(c). (*See* Dkt. 86 at 12). In fact, the Court dedicated only a few sentences to the statute, beginning with a quote from Chaitoff's briefing:

> "Despite receiving two disputes from Chaitoff, Experian chose to conceal this information within its reports rather than comply with its obligation to publish the in-dispute notation under 15 USC § 1681i(c)." Plaintiff provides zero factual support for this assertion, and in fact, Defendant's supplied facts rebut this.

(*Id.*) (quoting Dkt. 76 at 7–8). The Court, thus, merely stated that at that time, Chaitoff had not provided *factual* support for his assertion that Experian willfully violated the statute. It did not analyze whether Experian's interpretation of 15 USC § 1681i(c) was "objectively reasonable" as the Supreme Court does in *Safeco* for the insurance company's reading of § 1681a(k)(1)(B)(i). 551 U.S. at 70.

Second, even if the Court had opined as to whether Experian's reading of § 1681i(c) was reasonable in its initial summary judgment order, (Dkt. 86), the Court of Appeals clearly stated that this Court could take a fresh look at the issue when it reversed the initial order. *Chaitoff*, 79 F.4th at 820. The Court stated that "[o]n remand, the district court is free to consider anew the

6

question of willfulness as to the second dispute letter." *Id.* at 813–14. This holding likely recognized how limited this Court's discussion had been on the question of whether Experian violated § 1681i(c). *See id.* at 811 ("The district court said nothing about Chaitoff's third claim."). Moreover, the Court went on to clarify the meaning of § 1681i(c) writing: "we hold that the FCRA's statement-of-dispute provision does not require consumers to use any magic words or specific form to request that such a statement be added to her report. Rather, *the burden rests with the CRA*." *Id.* at 821. (emphasis added).

Following the Seventh Circuit's instruction, this Court "consider[ed] anew the question of willfulness as to the second dispute letter." *Id.* at 813–14. The Court concluded that Experian had not met its burden to show why it did not add a statement of dispute to Chaitoff's file writing: "Experian provides no binding caselaw support its understanding of FCRA that a statement from a consumer can trigger either: (1) a CRA to conduct a reinvestigation or (2) add a statement of dispute highlights that in his second dispute letter—but not both." (Dkt. 132 at 19).

This conclusion aligns with the Seventh Circuit's directive. The Court reevaluated Chaitoff's § 1681i(c) claim because it had not given it a fulsome analysis in its first summary judgment order. (Dkt. 86). Unlike in its initial summary judgment order, in the March 2025 Order, the Court analyzed Experian's understanding of § 1681i(c). It concluded that its reading raises the specter of a "reckless disregard of [Experian's] statutory duty." Safeco, 551 U.S. at 57. The March 2025 Order also benefited from the Seventh Circuit's discussion of § 1681i(c), which of course, it did not have when it analyzed Chaitoff's claims the first time.

Because the Court (i) never ruled on the soundness of Experian's interpretation of § 1681i(c) and (ii) received new guidance from the Seventh Circuit prior to its second summary

7

judgment order, the Court's conclusion is not at odds with *Safeco*. The Court's March 2025 Order, therefore, stands. (Dkt. 132).

## **CONCLUSION**

For the reasons set forth above, Experian's Motion for Reconsideration [134] is denied.

_____
Virginia M. Kendall
United States District Judge

Date: June 9, 2025