THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY A. CHAITOFF ) | |
| ) | |
| *Plaintiff,* ) | No. 18 C 07259 |
| v. ) | |
| ) | Chief Judge Virginia M. Kendall |
| ) | |
| OCWEN LOAN SERVICING LLC et al. ) | |
| ) | |
| *Defendants.* ) | |

### MEMORANDUM OPINION & ORDER

Pending before the Court is Plaintiff Jeffrey Chaitoff's Motion for Reconsideration. (Dkt. 143). Chaitoff asks the Court to partially reconsider its March 24, 2025, Order (the "March Order"), (Dkt. 132), which granted in part and denied in part Experian's motion for summary judgment. In that Order, the Court expressly denied Experian's motion for summary judgment as to (I) whether Chaitoff suffered actual damages and (II) that Experian did not act willfully in failing to include a statement of dispute in Chaitoff's credit file; the Court nonetheless found that there were other aspects of Chaitoff's claims that could not properly proceed. (Dkt. 132 at 21). Defendant Experian previously made a motion for reconsideration as to the second holding, which this Court denied. (Dkt. 142).

Now, Chaitoff renews the dispute over the March Order. Proceeding under Federal Rule of Civil Procedure 54(b), Chaitoff asks this Court to reexamine three aspects of the prior ruling: first, that Chaitoff could not include a pre-dispute injury in his actual damage calculations due to the FCRA's notice requirement; second, that Chaitoff had not presented an adequate showing of emotional distress; and three, the determination that no reasonable juror could find that Experian willfully violated its reinvestigation obligations under the FCRA in its response to Chaitoff's

1

second dispute letter. (Dkt. 143 at 1). For the reasons below, the Court denies Chaitoff's Motion for Reconsideration [143]. The Court, on its own motion, also modifies part of its damages analysis in the March Order [132].

## BACKGROUND

This litigation stems from Chaitoff's interactions with Experian and Ocwen Loan Serving, LLC between 2017 and 2018. The relevant facts are described in detail in this Court's prior opinions, and below where essential to the analysis. (*See, e.g.*, Dkt. 132, 142). The core of the issue for this Motion, though, comes down to this: Chaitoff signed an agreement with Ocwen that allowed him to make lower payments and avoid foreclosure—a Trial Period Plan (TPP); Experian omitted his participation in the TPP from his credit report, then failed to correct its error.

Chaitoff initially alleged that Experian violated 15 U.S.C. § 1681e(b), the FCRA's reasonable procedures requirement; 15 U.S.C. § 1681i(a), the FCRA's reasonable reinvestigation requirement; and 15 U.S.C. § 1681i(c), the FCRA's dispute statement provision. (Dkt. 1 ¶¶ 47–48). In terms of redress, he alleged that he suffered "actual damage, mental anguish, humiliation, and embarrassment." (*Id.* at ¶ 50). Chaitoff further claimed that all of Experian's violations were either negligent or willful under 15 U.S.C. §§ 1681n–o. (*Id.* ¶ 51). On May 21, 2021, this Court granted summary judgment in Experian's favor. (Dkt. 86).

The Seventh Circuit, however, stepped in and provided additional guidance to this Court and others on how to handle FCRA claims of Chaitoff's variety. *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 808 (7th Cir. 2023). The Seventh Circuit affirmed this Court's grant of summary judgment as it relates to Experian's reporting of the May, June, and July 2017 payments as late, noting that it was wholly accurate to report those months as delinquent because Chaitoff's payments during that period applied to earlier delinquent months. *Id.* at 811. It also affirmed this

2

Court's grant of summary judgment as to Experian's initial reporting efforts, which were reasonable beyond any doubt. *Id*. at 808.

From there, though, the Seventh Circuit resolved a previously unanswered question in the Circuit and determined that "[a] credit report is inaccurate under § 1681e(b) [the reasonable procedures requirement] and § 1681i(a) [the reasonable reinvestigation requirement] if it omits accurate information that could reasonably be expected to adversely affect a consumer's creditworthiness." *Id.* at 812.

With that new rule in hand, the Seventh Circuit explained how the omission of the TPP would have an obviously negative impact on a consumer's creditworthiness. All parties agreed that Experian "would have known about it based on the documents Chaitoff sent it . . . . [therefore, the TPP's absence was] a misleading factual inaccuracy that can give rise to liability under [both § 1681e(b) and § 1681i(a)]." *Id.* at 814, 816. Thus, the potential liability would come down to the reasonableness of Experian's response.

The Seventh Circuit then directly answered that question with regard to the procedural claim: because Experian's *policies* were reasonable as a matter of law, the grant of summary judgment was affirmed as to § 1681e(b), as noted above. *Id.* at 816. But the Seventh Circuit reversed the grant of summary judgment as to Chaitoff's § 1681i(a) claim. *Id.*

The Seventh Circuit noted that a reasonable jury could find that either or both of Experian's reinvestigations were unreasonable. *Id.* at 817. It noted that Experian could have asked Ocwen Loans to clarify why Chaitoff's provided documentation showed on-time trial payments in the summer of 2017 when Ocwen was reporting him delinquent in its first reinvestigation, or that a jury might find, in Experian's second reinvestigation, "repeating the same ineffective steps was not a reasonable response to Chaitoff's second letter." *Id.* at 819. Of these two, though, the Seventh

3

Circuit left open the possibility of a willfulness finding only in the second reinvestigation, noting that there was "no dispute that Experian was entitled to summary judgment as to Chaitoff's willfulness claim arising from his first dispute letter." *Id.* The same was not true of Chaitoff's claim under a theory of negligence as to both the first and second reinvestigation, which presented a proper jury question. *Id.* The Seventh Circuit left it to this Court to "consider anew the question of willfulness as to the second dispute letter" under § 1681i(a). *Id.*

Finally, the Seventh Circuit suggested that this Court's prior opinion insufficiently discussed the § 1681i(c) claim. *Id.* at 811. The Seventh Circuit found that "Chaitoff's second letter satisfies [the rights-creating language of an § 1681i(c) claim]'s simple formulation. That was enough to trigger Experian's obligations to note the dispute under § 1681i(c)." *Id.* at 820. Thus, "the omission of the TPP from Chaitoff's credit report presents a factual question, not a legal one." *Id.* at 821. The Court of Appeals did not address the respective strength of the negligence and willfulness theories undergirding the § 1681i(c) claim.

On remand, this Court addressed the arguments about Plaintiff's alleged harms in the first instance, finding that Chaitoff had suffered actual damages (necessary for a negligence claim) with regard to a denial from Northwest Federal Credit Union—but not with regard to the denials from PNC Bank or FM Home Loans—for his claim under § 1681i(a) (the reasonable reinvestigation requirement). (Dkt. 132 at 10–13). This Court also found that Chaitoff's emotional distress claims could not survive summary judgment. (*Id.* at 14).

From there, the March Order largely focused on the question of willfulness as to Chaitoff's § 1681i(a) claim with regard to Plaintiff's second letter, as the Seventh Circuit directed, and once again granted Experian's motion for summary judgment on that question. (*Id.* at 18). The March Order denied the motion for summary judgment on the question of willfulness as to Chaitoff's

4

§ 1681i(c) claim (the dispute statement provision). The Order did not dispose of any of Chaitoff's claims on a theory of negligence, which are actionable under § 1681o, to the extent the actual damages findings survived summary judgment.

Chaitoff now moves for reconsideration on three issues. The first two derive from this Court's analysis regarding damages. As detailed in the prior Opinion, Chaitoff had not demonstrated actual damages as to FM Home Loans' mortgage denial because that incident preceded Experian receiving notice of the dispute. (*Id.* at 11). Chaitoff contends that the FM Home Loans decision had "lasting consequences" that warrant reconsideration. (Dkt. 143 at 1). Second, Chaitoff takes issue with this Court's finding that his emotional distress claims were conclusory statements that could not survive summary judgment. (*Id.* at 1; Dkt. 132 at 14).

Chaitoff's third argument deals with the liability itself. He moves for reconsideration as to this Court's finding that no reasonable juror could find that Experian willfully violated the reasonable reinvestigation requirement based on its response to Chaitoff's second dispute. (Dkt. 132 at 18); 15 U.S.C. § 1681i(a).

## STANDARD OF REVIEW

Chaitoff moves for reconsideration under Federal Rule of Civil Procedure 54(b). While Rule 59(e) governs motions that seek to "alter or amend a *judgment*," Rule 54(b) "provides that non-final orders may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012); Fed. R. Civ. P. 59(e); Fed. R. Civ. P. 54(b). "Courts in this district generally applies the same standards in reconsidering their decisions under Rules 54(b) and 59(e)." *Siemens Transformadores S.A. de C.V. v. Soo Line R. Co.*, No. 10 C 3750, 2012 WL 1938848, at *1 (N.D. Ill. May 29, 2012) (collecting cases).

5

The Seventh Circuit describes reconsideration as most pertinent where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); *see also Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) ("Motions for reconsideration serve a limited function: to correct manifest errors of law or fact."). Manifest errors are "not demonstrated by the disappointment of the losing party." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). And motions for reconsideration are not a vehicle for rehashing lost arguments or advancing theories or evidence that should have come out before the Court entered final judgment. *Sigsworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2007).

## DISCUSSION

Chaitoff brings arguments in two spheres: damages and liability. Addressing each in turn, the Court finds that neither meets the "manifest errors of law or fact" standard necessary to justify modifying the Court's findings. Additionally, the Court, on its own motion, adjusts the scope of its actual damages findings in the March Order.

### I. Damages

Because the Seventh Circuit affirmed summary judgment as to the § 1681e(b) claim, the March Order addressed potential damages for only the § 1681i(a) reasonable reinvestigation requirement and the § 1681i(c) dispute statement provision. To prevail on a willfulness claim, unlike a negligence claim, a plaintiff need not prove actual damages. *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1194–95 (7th Cir. 2021) ("Even if a plaintiff cannot prove actual damages, [he] may still recover statutory or punitive damages by proving that the defendant willfully violated the FCRA.").

6

a.  FM Home Loans

Chaitoff's actual damages must arise between May 21, 2018 (when Experian received Chaitoff's first dispute letter, (Dkt. 72 ¶ 17)) and January 17, 2019 (when Experian deleted the Ocwen account from Chaitoff's file). (Dkt. 132 at 10); *Walton v. BMO Harris Bank N.A.*, 761 F. App'x 589, 592 (7th Cir. 2019) ("[T]he Fair Credit Reporting Act is not a strict liability statute; [the credit reporting agency] was not required to reinvestigate until it received notice of a possible error."). FM Home Loans denied Chaitoff a mortgage in April 2018. (Dkt. 132 at 10). FM Home Loans determined Chaitoff was ineligible because his credit report reflected non-payment in May, June, and July 2017, and because of the "Refer with Caution" recommendation, identifying that the Ocwen mortgage tradeline on his credit report was 60 days or more past due within the 12 months prior to the credit report date. (*Id.* at 6).

Chaitoff attempts to distinguish *Walton* from his theory of "continuing damages," but the Seventh Circuit held plainly that "potential liability began only after Walton first disputed the information in her credit report." *Walton*, 761 F. App'x at 592. Chaitoff gestures at factual differences between his case and the lost future income the district court in *Walton* considered, but they do not overcome this concrete requirement. The very nature of any credit inquiry or denial is that it has downstream effects, such as Chaitoff's yearlong delay in eligibility with FM Home Loans. (Dkt. 143 at 4). If these consequences could overpower the notice requirement, the notice requirement would be moot. That is the law in this Circuit. *See Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 608 (7th Cir. 2005); *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004). And even if that were not the case, Chaitoff's own evidence shows that FM Home Loans would not have approved a mortgage in April 2018 without timely payments in the

7

preceding 12 months, which was factually impossible even if the TPP had been properly reported, as affirmed by the Seventh Circuit. (Dkt. 143 at 4).

Chaitoff's other cases are out-of-circuit and mostly of an inapposite procedural posture. *See Wheeler v. Trans Union LLC*, 2018 WL 2431876, at *4 (D. Ariz. May 30, 2018) (denying a motion to dismiss on plaintiff's emotional distress claim regarding the stress and anxiety of not applying for new credit); *Mund v. Transunion*, 2019 WL 955033, at *3 (E.D.N.Y. Feb. 27, 2019) (same); *Hamm v. Equifax Info. Servs. LLC*, 2018 WL 3548759, at *4 (D. Ariz. July 24, 2018) (same); *Coulter v. Chase Bank USA, N.A.*, 2020 WL 5820700, at *13 (E.D. Pa. Sept. 30, 2020) (discussing how "emotional damages, losses to one's creditworthiness, and refraining from applying for credit are all contemplated under the FCRA" and denying summary judgment under § 1681s-2(b)). Thus, Chaitoff's motion to reconsider on this ground is denied.

### b. Emotional Damages

Chaitoff next takes issue with this Court's determination that his emotional damage claims amounted to conclusory statements. But as established, a motion for reconsideration should serve to correct "manifest errors of law or fact." *Caisse Nationale de Credit Agricole*, 90 F.3d at 1269. It is not a tool for rehashing lost arguments, *Sigsworth*, 487 F.3d at 512, as Chaitoff does here. As this Court previously explained, Chaitoff's testimony that he "dealt with a range of issues including sleeplessness, embarrassment, frustration and back problems" amounts merely to "conclusory statements" in reference to his alleged emotional distress. (Dkt. 132 at 14); *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) ("[W]hen the injured party's own testimony is the only proof of emotional damages, he must explain the circumstances of his injury in reasonable detail; he cannot rely on mere conclusory statements."); *see, e.g.*, *Jackson v. Experian Info. Sols., Inc.*, 236 F. Supp. 3d 1058, 1064 (N.D. Ill. 2017). In short, the little evidence that does exist

8

concerning purported emotional harm properly did not survive summary judgment, and certainly does not justify reconsideration.

### c. Additional Rule 54(b) Correction

The discretionary power of the district court to enter a Rule 54(b) judgment may be exercised on the court's own motion. On the topic of damages, the Court must clarify the scope of its summary judgment ruling. In its prior Opinion, this Court rejected a theory of actual damages as to the alleged § 1681i(c) violation on the understanding that Chaitoff only raised "arguments about Experian's failure to include the dispute statement in relation to the FM Home Loans denial," which had not survived summary judgment. (*Id*. at 15). Upon review, however, this was a misstatement of the record. While Chaitoff used language from FM Home Loans' denial as an example of the impact of the missing dispute statement, he did not cabin the arguments strictly as such but directed it to "all the aforementioned economic damages." (Plaintiff's Brief in Opposition to Summary Judgment, Dkt. 121 at 9). That includes the actual damages resulting from Northwest Federal Credit Union's denial, which survived summary judgment. Thus, to the extent Chaitoff is successful in putting forth a § 1681i(c) claim on a negligence theory, he could demonstrate the requisite actual damages necessary to do so.

## II.  Liability

Finally, Chaitoff moves for reconsideration as to this Court's finding that while Chaitoff could proceed on a theory of negligence as to either the first or second dispute, no reasonable juror could find that Experian willfully violated the § 1681i(a) reasonable reinvestigation requirement based on its response to Chaitoff's second dispute. (Dkt. 132 at 17).

Recall, Chaitoff's first letter stated that his loan was modified after he came upon financial hardship, and that "[s]ince the modification, and agreed decrease in amount due, I made each

9

monthly payment on time consistently throughout 2017." (Dkt. 72-5, Defendant's Exhibit D (Plaintiff's First Dispute Letter to Experian, with attachments (5/14/2018))). He attached Ocwen Loans' TPP offer letter to the submission, as well as Ocwen's confirmation that he had made his modified payments on time in the summer of 2017, and sought a correction to his Experian report for not mentioning his TPP. (*Id.*). Experian received Ocwen Loans' report that Experian's existing reporting was correct without the TPP mention, and processed the confirmation as such.

Chaitoff followed up with a second letter asking for a second investigation and asking Experian to "call[] Ocwen directly or [Chaitoff's attorneys]". (Dkt. 72-8, Defendant's Exhibit G (Plaintiff's Second Dispute Letter to Experian, with attachments (7/2/2018))). Chaitoff's letter makes the incorrect statement that "the trade line should reflect that the payments were timely," because the timely payments under the TPP went toward the delinquent months, and thus would not appear as timely themselves. But more broadly, Chaitoff's letter emphasizes the lack of information about the loan modification plan on the report, noting that its absence was "misleading lenders into believing that [he] did not make payments throughout 2017" when he in fact made some, albeit under the TPP. (*Id.*) Experian once again asked Ocwen for confirmation, and Ocwen stood by its original reporting.

As the Seventh Circuit made clear in eliminating the possibility of a finding of willfulness as to the first dispute letter, "[n]one of the facts Chaitoff offers supports a finding that Experian was indifferent to the harms Chaitoff alleges." *Chaitoff*, 79 F.4th at 819. "Nor," the Seventh Circuit further noted in the case of the first letter, "is the discrepancy between Ocwen's response and the documents Chaitoff provided with his dispute letter so obvious that Experian's failure to pick up on it constitutes a gross deviation from what might be reasonable." *Id.* On remand, this Court

disposed of the possibility of willfulness for the response to the second letter in its March Order. Chaitoff asks to revisit that determination.

Chaitoff first claims that the Court held that there is "no evidence that Experian had the requisite *actual* knowledge of an error in Ocwen's reporting," and uses that as a platform to catapult into an argument that a willful violation of the FCRA does not require actual knowledge. (Dkt. 143 at 9) (emphasis added). But those were not the words of this Court, and it was inappropriate to misquote it as such. The Court's statement was "Chaitoff presents no evidence that Experian had the requisite knowledge of an error in Ocwen's reporting," without reference to "actual knowledge." (Dkt. 132 at 17). The only mention of "actual knowledge" came from Chaitoff's own case citations, which this Court deemed unsupportive of Chaitoff's own claims. (*Id.*)

As detailed in the prior Opinion, the proper standard for a willful violation of the FCRA involves a reckless disregard of statutory duty. (*Id.* at 15–16, 18). Reckless conduct is that which creates a risk substantially greater than that necessary to render the conduct negligent. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007). But the Seventh Circuit has held that "probability isn't everything." *Chaitoff*, 79 F.4th at 819 (citing *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 695 (7th Cir. 2008)). Recklessness also looks to the social utility (or lack thereof) of the conduct at issue. *Id.*

The Court concedes that this is a closer question than its March Order credited. The Seventh Circuit observed that in repeating the exact same "ineffective steps" it had followed in responding to the first letter, Experian "could not reasonably expect a different outcome." *Chaitoff*, 79 F.4th at 819. Further, the documentation that Chaitoff's letters provided *did* demonstrate his enrollment and subsequent successful completion of the TPP, behavior that the Seventh Circuit held as useful

11

intel for future lenders. Thus, Experian had access to information demonstrating the TPP's existence, and also had access to Ocwen's report that did not disclose said TPP, and yet did nothing to address the conflict. A jury might find it hard to square the lack of specific inquiry regarding documentary evidence of a material discrepancy with FCRA compliance in response to the second letter. The Ninth Circuit, for example, went so far as to grant summary judgment to a plaintiff on its own motion after finding that "[a] reinvestigation that overlooks documents in the court file expressly stating that *no* adverse judgment was entered falls far short of [the statutory] standard." *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1070–71 (9th Cir. 2008) (leaving the question of whether Experian's failure was also willful to resolution at trial on remand).

While "[Experian's] reinvestigation does not have to fix the mistake to preclude liability," it does need to be reasonable in the eyes of a jury. *Id.* If Experian asked Ocwen Loans to clarify why Chaitoff's provided documentation showed on-time trial payments in the summer of 2017 when Ocwen was reporting him delinquent, it may have reached the conclusion that the TPP was improperly excluded from Chaitoff's file. "[W]hen a credit reporting agency receives such notice, it can target its resources in a more efficient manner and conduct a more thorough investigation." *Chaitoff*, 79 F.4th at 817–18 (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 286–87 (7th Cir. 1994)).

But unlike the Ninth Circuit in *Dennis*, the Seventh Circuit did not establish that either the first or second reinvestigation was reasonable as a matter of law. *Chaitoff*, 79 F.4th at 819 ("Experian's reinvestigations might have been reasonable; they might not have been, too."). And the Seventh Circuit has separately held that "only a reading that is objectively unreasonable can be deemed a willful violation" of the FCRA. *Van Straaten v. Shell Oil Prods. Co. LLC*, 678 F.3d 486, 489 (7th Cir. 2012) (citation modified); *see also Safeco*, 551 U.S. at 50. Thus, this Court will

not disturb its prior granting of Experian's summary judgment motion on this point. In sum: Chaitoff's § 1681i(a) claims as to both the first and second reinvestigations can proceed on a negligence theory, and Chaitoff's § 1681i(c) claim can proceed on both a negligence and willfulness theory. The two § 1681i(a) claims on a willfulness theory, as well as the § 1681e(b) claim in full, did not survive summary judgment.

## CONCLUSION

Plaintiffs have identified no new evidence or any manifest errors of law or fact in the Court's Opinion to meet their heavy burden of justifying alteration or amendment of the judgment entered in this case. For the reasons set forth above, Plaintiffs' Motion for Reconsideration [143] is denied. The Court, on its own motion, also modifies part of its damages analysis in the March Order [132].

Virginia M. Kendall
United States District Judge

Date: November 6, 2025